JS-6

# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| WINSTON MAURICE BROWN,<br>Plaintiff,<br>v.<br>LAFAYETTE FEDERAL CREDIT UNION, *et al.*<br>Defendants. | ED CV 23-01869 TJH<br><br>**Order** |

The Court has considered Plaintiff Winston Maurice Brown's motion for default judgment [dkt. # 53] against Defendant Lafayette Federal Credit Union ["the Credit Union"], together with the moving papers.

The following is a summary of the relevant facts alleged in the Complaint.

In May, 2022, Brown applied for a single $300,000.00 loan from Defendant HFS Financial ["HFS"] after he was referred to HFS by a home improvement contractor. Brown applied for the loan on HFS's website. Unbeknownst to Brown, HFS was a loan broker rather than a lender. As a result of his HFS loan application, an unsecured $320,000.00 loan was approved by the Credit Union, even though Brown applied for only a $300,000.00 loan. At that time, Brown was unclear as to how his HFS loan

application led to a loan approval from the Credit Union.

Thereafter, the Credit Union issued five disbursements totaling approximately $329,000.00, with approximately $29,000.00 allegedly for hidden fees. All of the five disbursements were deposited into Brown's account at Navy Federal. Each disbursement corresponded to a separate loan, but the Credit Union failed to provide Brown with adequate Truth in Lending Act disclosures for each of the five separate loans. Further, because each of the five loans charged 10.49% interest, Brown alleged that the Credit Union was charging him a collective 52.45% interest for the five loans. Brown alleged that he did not wet sign or electronically sign any of the Credit Union's loan documents, though the loan documents submitted by Brown in support of his motion for default judgment appear to have been electronically signed by him.

After the disbursements were received, Brown called HFS. HFS representatives told Brown that the loan proceeds were divided into multiple disbursements due to the Credit Union's loan and payout limits, that he had only one loan despite having five different loan numbers, and that he was being charged only 10.49% interest on the entire loan amount.

In June, 2022, Brown spoke with a representative from the Credit Union who offered to unwind the loans if Brown returned all of the loan proceeds to the Credit Union, and if the undisclosed fee paid to HFS by the Credit Union was returned to the Credit Union. Despite rounds of emails, the loans were never unwound, and Brown made his first loan payment on June 25, 2022.

On September 13, 2023, Brown filed this case, in *pro per*, against the Credit Union and HFS, alleging claims for breach of fiduciary duty, fraud/misrepresentation, breach of contract, injunctive relief, unjust enrichment, racial discrimination, violation of the Truth in Lending Act, predatory lending practices, and conspiracy.

Neither the Credit Union nor HFS answered or otherwise responded to the Complaint. On January 8, 2024, the Credit Union's default was entered.

On February 13, 2024, the Credit Union sued Brown for breach of contract in

the Superior Court of California for the County of Riverside, case number CVSW2401586. That case is awaiting trial.

On February 5, 2026, the Court dismissed HFS in response to Brown's request to dismiss HFS.

Brown, now, moves for default judgment against the Credit Union.

Brown filed this case as a diversity action and alleged that the Credit Union and HFS were both incorporated in Washington, D.C. and that both do business in Maryland. However, Brown failed to allege the principal place of business for each of the corporate defendants. Nevertheless, the Court, previously, determined that it has subject matter jurisdiction over this case based on federal question jurisdiction.

Generally, the Court's lack of personal jurisdiction over a defendant is a defense that may be waived by the defendant. Fed. R. Civ. P. 12(h)(1). However, when considering a motion for default judgment, the Court may dismiss the case, *sua sponte,* if it lacks personal jurisdiction over the defendant because a judgment entered without personal jurisdiction over the defendant is void. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). At a minimum, the Court should confirm whether it has personal jurisdiction over the defendant before entering a default judgment. *In re Tuli*.

At this procedural juncture, the burden on Brown was to make a *prima facie* showing of jurisdictional facts to establish a basis for personal jurisdiction. *See Dorchester Fin'l Secur., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2nd Cir. 2013). For the Court to have personal jurisdiction, here, over the Credit Union, absent one of the traditional bases for personal jurisdiction – presence, domicile or consent – due process requires that the Credit Union have "certain minimum contacts with [California] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945). The contacts made by the Credit Union's employees within the scope of their employment are, generally, attributable to the Credit Union. *See College-Source, Inc. v. AcademyOne,*

*Inc.*, 653 F.3d 1066, 1078 (9th Cir. 2011).

The Court can exercise general personal jurisdiction over the Credit Union only if its contacts with California are so continuous and systematic as to essentially render the Credit Union "at home in the forum State," thereby making it subject to personal jurisdiction for all claims, including even those claims that are entirely unrelated to the Credit Union's contacts with California. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The record, here, does not support the exercise of general personal jurisdiction.

The Court can exercise specific personal jurisdiction over the Credit Union for claims that are related to its contacts with California. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014). However, for those contacts to be considered, the Credit Union must have purposefully directed those activities at California residents, or purposefully availed itself of the privilege of conducting activities within California, thereby invoking the benefits and protections of California law. *See Kulko v. Sup. Ct. of Calif. in & for City & County of San Francisco*, 436 U.S. 84, 94 (1978). Purposeful availment is established "where the [forum-related] contacts proximately result from actions by the defendant [itself] that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985).

The determination as to whether the Court has personal jurisdiction over the Credit Union must be based on an analysis of the Credit Union's contacts with California prior to when Brown's claims arose. *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990). Consequently, the Court cannot consider the Credit Union's Riverside County suit against Brown as a contact, or to establish the Credit Union's purposeful availment, because that suit was filed after this case was filed. *See Farmers*.

Based on the allegations in the Complaint and the other facts and documents previously before the Court, the Court could not determine whether it has personal jurisdiction over the Credit Union. Consequently, on August 5, 2026, the Court issued

an order to show cause as to why this case against Defendant Lafayette Federal Credit Union should not be dismissed for lack of personal jurisdiction. On August 12, 2026, Brown filed a declaration in response to the order to show cause. Despite the Clerk of Court having served a copy of the order to show cause on the Credit Union by first class mail, and despite Brown having served a copy of his declaration on the Credit Union by first class mail, the Credit Union has not appeared or responded.

Brown's declaration set forth significant facts to show that the Credit Union knew he was a California resident before it approved his loan application. However, a defendant's knowledge of a plaintiff's residency is not sufficient, by itself, to establish specific personal jurisdiction; rather, the relationship must arise out of contacts that the defendant, ***itself,*** created with California as the forum state. *See Walden*, 571 U.S. at 284.

The allegations, evidence and arguments, here, show that Brown applied to HFS for a loan, and that HFS somehow assigned Broen's loan application to the Credit Union. Brown provided no facts to support a finding, even on a *prima facie* basis, that the Credit Union purposefully reached out to a California resident and purposely availed itself of the right to conduct activities in California.

Consequently, the record, here, does not support the exercise of specific personal jurisdiction.

Accordingly,

**It is Ordered** that this case be, and hereby is, **Dismissed**, without prejudice, for lack of personal jurisdiction.

Date: September 18, 2026

Terry J. Hatter, Jr.
Senior United States District Judge